IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITE HERE, LOCAL 1, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:15-cv-04507 |
| v. | ) | |
| | ) | |
| HRC CORPORATION, d/b/a | ) | The Honorable Robert W. Gettleman |
| HRC REGENCY CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION OR FOR JUDGMENT ON THE PLEADINGS**

Defendant HRC Corporation, d/b/a HRC Regency Chicago ("HRC"), is asking the Court to find as a matter of law that two arbitration awards directing HRC to "cease and desist" from certain contract violations are not entitled to confirmation by the Court—in effect, that the remedial awards are illegitimate and unenforceable. This proposal stands the law of arbitration on its head. The strong presumption under federal and state arbitration statutes, and under the federal common law of labor arbitration, is that a court must confirm an arbitral award absent a showing that the award should be vacated or modified. In labor arbitration, a court may not consider the merits of an arbitral award in confirming it except to make sure that the award draws its essence from the collective bargaining agreement.

HRC's arguments, if accepted, would vitiate the power of labor arbitrators to award effective remedies against repeated contract violations. The company's logic runs counter to well-established law that calls for summary judicial confirmation of arbitration awards, with extremely limited areas of judicial review (none of which HRC claims might apply here).

1

HRC's motion would effectively vacate two awards duly issued by impartial arbitrators pursuant to the CBA between HRC and UNITE HERE Local 1. But in addition, HRC's motion to compel arbitration is outside the jurisdiction of this Court, because HRC does not (and cannot truthfully) allege that Local 1 is refusing to arbitrate controversies about HRC's violations of the collective bargaining agreement. Further, HRC's motion for judgment on the pleadings fails when the pleadings are construed in favor of the nonmoving party, as they must be at this stage.

## FACTS AND PROCEDURAL BACKGROUND

UNITE HERE Local 1 represents employees at the HRC and is currently party with HRC to a collective-bargaining agreement that is valid from September 1, 2013 through August 31, 2018 (the "CBA"). Comp.¶ 5. Section 46 of the CBA contains a grievance-and-arbitration procedure for resolving disputes about alleged violations of the CBA; the final step of this procedure is arbitration. Section 46 specifies that "The award of the arbitrator shall be final, binding, and conclusive on all parties." CBA at 41.

At issue here are two arbitration awards concerning HRC's violations of Section 56 of the CBA, which prohibits supervisors from performing bargaining-unit work except in case of emergency. The first, issued by arbitrator George Fleischli on February 2, 2015, found that HRC management had committed several violations of Section 56. The award did not order compensatory relief. Rather, Arbitrator Fleischli found it appropriate to issue "positive relief, in the form of a directive to the employer to cease and desist from engaging in the conduct deemed to violate the agreement." Fleischli Award at 52. The award directed HRC "to cease and desist from violating Section 56 and to take all reasonable steps necessary to ensure that its managers hereafter comply with its terms."

The second award, issued by arbitrator Ann Kenis on March 1, 2015, dealt with additional violations of Section 56 of the CBA. Arbitrator Kenis agreed with the reasoning of the Fleischli award and applied it to new allegations of numerous violations by management. The Kenis award included an award of monetary damages for certain violations that had taken place. It also included prospective relief, stating, "The Hotel is ordered to cease and desist from violating Section 56 of the contract." Kenis Award at 52.

After the Fleischli and then the Kenis awards were issued, HRC managers continued to violate Section 56 of the CBA. Specific violations are alleged in paragraph 19 of the complaint. In addition, counsel for HRC stated that Arbitrator Fleischli's cease-and-desist order was "worthless." Comp.¶ 17; Corrected Ans. ¶ 17 (admitting the comment was made). HRC has not explicitly petitioned to vacate either the Fleischli or the Kenis award, although its present motion amounts to such a petition. Since issuance of the awards, Local 1 has continued to file grievances about management violations of Section 56.

Local 1 filed its complaint in the present action on May 21, 2015. In the complaint, Local 1 seeks only the confirmation of the Fleischli and Kenis arbitration awards, along with its costs and attorneys' fees. Comp. at 8. HRC filed an answer on June 17 and then filed the pending motion on July 13, 2015. HRC asks for a dismissal of the action and an order compelling arbitration, or for judgment on the pleadings.

### ARGUMENT

**1. This action to confirm two arbitration awards is properly before the Court, not an arbitrator.**

HRC's two-headed motion claims that because the CBA calls for arbitration of all contractual disputes, Local 1's complaint should be dismissed or defeated by judgment on the pleadings, and the complaint should instead be deferred to arbitration. But the parties have

3

already arbitrated two grievances regarding HRC's violations of the same contractual provision, and two arbitrators have issued injunctive awards that are final and binding upon the parties. The relief that Local 1 prays for—the confirmation of the Fleischli and Kenis awards—is relief that only this court and not an arbitrator can grant. Moreover, failing to confirm the awards would gut the parties' agreement to arbitrate disputes by denying any effect to otherwise unimpeachable arbitration awards.

### A. Confirmation of the Fleischli and Kenis awards is relief that only this Court, not an arbitrator, can grant.

Confirmation of arbitration an award gives legal effect to the parties' arbitration agreement, by making the award enforceable as if it were a judgment of the court. The Federal Arbitration Act ("FAA") explicitly provides that "any party to the arbitration may apply to the court . . . for an order confirming the award. . . ." 9 U.S.C. § 9. The arbitration statutes of all 50 states likewise provide for the confirmation of arbitration awards. See, e.g., 710 ILCS 5/11. Under the FAA, upon application for confirmation "the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."

Likewise, awards may be confirmed under the federal common law of collective bargaining agreements that has developed pursuant to Section 301(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[1] In fact, a labor arbitration award is entitled to confirmation as long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960) ("*Enterprise Wheel*").

---

[1] Although the FAA does not apply to collective bargaining agreements, "the federal courts have often looked to the Act for guidance in labor arbitration cases" as they have fashioned "rules of federal common law" for suits under § 301 of the LMRA. *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987), citing *Textile Workers v. Lincoln Mills,* 353 U. S. 448 (1957).

4

An arbitration award, when confirmed, becomes a judgment of the confirming court. If a party to the arbitration violates the award after it has been confirmed, the prevailing party can apply to the court for enforcement, including by means of a contempt motion. Making an award into a court judgment and finding a party in contempt of court are powers that private arbitrators do not have; they are by their nature powers that are vested only in the courts.

Here, Local 1 prays in its complaint only for relief that arbitration under the CBA cannot provide: the confirmation by this Court of the Fleischli and Kenis awards. Local 1 does not ask for relief beyond what is ordered in the awards, so there is no basis for deferring Local 1's request to arbitration. Likewise, HRC's request for judgment on the pleadings fails, because the CBA's arbitration provision does not conflict with the well-established right of a prevailing party to seek confirmation of an arbitral award after it is issued.

### B. The statute of limitations for HRC to seek to vacate the awards has expired, so HRC may not block their confirmation.

"It is well-settled law in this circuit that 'the failure to challenge an arbitration award within the applicable limitations period renders the award final.'" *McKinney Restoration, Co., Inc., v. Illinois Dist. Cncl No. 1 of the Int'l Union of Bricklayers and Allied Craftworkers, AFL-CIO*, 392 F.3d 867, 869 (7th Cir. 2004), citing *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir.1987); *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir.1996); *Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir.1994). The applicable limitations to vacate an arbitration award in Illinois is 90 days. *Centor,* 831 F.2d at 1311; *Gilchrist,* 87 F.3d at 870 (same); *Lemoncello,* 36 F.3d at 681.

HRC's pending motion seeks the dismissal of Local 1's complaint to confirm the Fleischli and Kenis awards, or in the alternative judgment on the pleadings in favor of HRC. The effect of HRC's motion would be to vacate the arbitral awards. But the motion was filed on

5

July 13, 2015, well more than 90 days after the second award was issued on March 1, 2015. Even HRC's answer to the complaint was filed on June 17, 2015, more than 90 days after the issuance of the second award.

HRC's objection to the awards is that the injunctive relief they ordered—their directives to HRC to "cease and desist" from violating Section 56 of the CBA—is not the sort of relief that a court may confirm. But an argument that the relief granted by an arbitration award does not draw its essence from the collective bargaining agreement (and thus exceeds the arbitrator's powers) is an attack on the underlying validity of the arbitration award and must be raised within the time period available for moving to vacate the award. *Lemoncello*, 36 F.3d at 682-683. Because HRC's challenge to the awards is outside the limitations period, the awards must be confirmed. HRC's end-run around the statute of limitations should be rejected.

### C. There is no defect in the Fleischli or Kenis awards that would make their confirmation improper.

There are only limited circumstances in which a court may set aside an arbitration award. These circumstances would be where "the grievance is not arbitrable, . . . the arbitrator exceeds his contractual authority, . . . the indicia of fairness are absent, . . . [the award] is arbitrary or capricious, . . . or where the process is tainted by fraud or deceit." *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 295 (7th Cir. 1975) (citing cases). None of these circumstances applies here; nor does HRC suggest that any does. To the contrary, the two awards give every indication that they were issued properly after a fair arbitration process, and that the arbitrators drew the essence of their awards from the contract itself after considering the evidence and arguments presented by the parties.

Rather, HRC objects to the remedy ordered by Arbitrators Fleischli and Kenis: that HRC "cease and desist" from violating Section 56 of the CBA. But HRC's position that an arbitrator's

6

order of prospective relief is improper runs directly counter to case law. The Seventh Circuit stated in *Honeywell* that injunctive relief in an arbitration award "is not inherently beyond the capacity of an arbitrator." *United Radio and Machine Workers of America v. Honeywell Inc.*, 522 F. 2d 1221, 1226 (7th Cir. 1975). The court continued, making clear that it is for the arbitrator, not the courts, to decide "whether the contract . . . would authorize an arbitrator to grant the declaratory and injunctive relief sought." *Id.* The court then catalogued with approval a variety of types of injunctive relief granted by arbitrators. *Id.* at 1226-1227. The remedy ordered by an arbitrator is thus a part of the merits of the question presented to the arbitrator, and is not to be second-guessed by a court. "The federal policy of settling labor disputes by arbitration would be undermined" if courts were to review arbitration awards on their merits. *Enterprise Wheel*, 363 U.S. at 596.

In the present action, there is no reason to think the cease-and-desist orders in the Fleischli and Kenis awards constitute relief that is not authorized by the CBA. And more importantly, as long as the awards draw their essence from the CBA, it is not for this Court to second-guess the arbitrators' choice of remedies. Because HRC does not allege any of the limited bases for setting aside the Fleischli and Kenis awards, they should be confirmed.

   **2. HRC's reasoning would effectively nullify the power of labor arbitrators to grant affirmative relief for contract violations.**

The efficacy of private agreements to arbitrate depends upon a reliable backstop to the enforcement of such agreements—summary confirmation of awards by the courts. A private arbitrator has no enforcement power, no police force, no power to find parties in contempt. These are powers reserved to the government and available through the courts. To render arbitration agreements enforceable, the parties to the agreements must have effective recourse to the courts to confirm awards that are duly rendered in arbitration.

7

This, of course, is the reasoning behind the confirmation provisions of the FAA and of state arbitration statutes. It is also the reasoning enunciated by the Supreme Court in the seminal case about LMRA § 301, *Lincoln Mills, supra* n. 1. In *Lincoln Mills*, the employer had refused several demands to arbitrate grievances arising under a CBA that contained an arbitration clause. The Supreme Court declared that the arbitration clause was enforceable under Section 301, the very purpose of which "was to provide the necessary legal remedies" and "place[] sanctions behind agreements to arbitrate grievance disputes." *Id.* at 455, 456. The Court found a "congressional policy in favor of the enforcement of agreements to arbitrate." *Id.* at 458. It is this policy that has guided subsequent judicial development of the law of labor arbitration under Section 301, including the holding in *Enterprise Wheel* that a labor arbitration award must be confirmed if it "draws its essence from the collective bargaining agreement." 393 U.S. at 597.

HRC claims that the arbitral awards directing it to cease and desist from a certain type of contract violation are unenforceable under Section 301. That is, HRC proposes a new legal principle that limits the type of relief an arbitrator may award, even where that relief is available according to the CBA and where the arbitrator has expressly found that a cease-and-desist order is needed to prevent continued contract violations. This principle runs counter to *Lincoln Mills* and *Enterprise Wheel*. It would render ineffective the numerous arbitral awards that include relief in the nature of a prohibitory injunction.

The absurdity of HRC's position is evident from its argument that "Plaintiffs Have Failed to Establish Entitlement to Prospective Relief." HRC's Corrected Memo at 9. In fact, Arbitrators Fleischli and Kenis *have already ordered* prospective relief. Local 1 should not have to make a *further* showing to a court that it is entitled to the relief that has been duly ordered by two arbitrators acting within their powers. HRC's position is contrary to the well-established

8

legal principles that favor the enforcement of arbitral remedies when those remedies are compatible with the collective bargaining agreement that the arbitrator is charged to interpret and apply. The Court should reject HRC's flawed logic and confirm the awards.

3. **Local 1 pleads ongoing violations of the CBA not to avoid arbitration, but to show the existence of a controversy that warrants confirmation of the Fleischli and Kenis awards.**

HRC's motion is persistently misleading about the relief requested by Local 1 in its complaint. HRC claims that "Plaintiff requests that this Court provide prospective relief to the Fleischli and Kenis Awards based upon a series of subsequent violations of Section 56." HRC's Corrected Memo at 8. But although Local 1 does plead a number of violations of Section 56 that occurred after the two awards were issued, it does so not to avoid arbitrating grievances about those awards but to meet the jurisdictional requirement set by the Seventh Circuit for complaints to confirm arbitration awards.

Courts in the Seventh Circuit (and other jurisdictions) decline to confirm arbitration awards when there is no live and actual dispute between the parties. *See, e.g., Chicago Reg'l Council of Carpenters*, 2012 WL 6189635 *5 (N.D. Ill. Dec. 12, 2012), citing *Wisconsin Right to Life State Political Action Committee v. Burland*, 664 F.3d 139, 148 (7th Cir. 2011); *Derwin v. Gen. Dynamics Corp.*, 719 F.2d 484, 492-93 (1st Cir. 1983); *Yellow Freight Systems, Inc. v. Local Union 710, IBT*, 1994 WL 665086, *2 (N.D.Ill. Nov. 16, 1994). The existence of an actual dispute between the parties has been taken as a jurisdictional requirement under § 301 of the LMRA. *See Yellow Freight Systems, Inc.*, 1994 WL 665086 at *2 (dismissing complaint to confirm arbitration award for lack of subject matter jurisdiction because parties were complying with award and the LMRA confers no jurisdiction where there is no controversy).

Local 1 thus needed to plead facts showing the existence of a live dispute or noncompliance with the arbitration awards in order to demonstrate that this Court has jurisdiction to confirm the two awards. That is the import of paragraph 19 of the complaint and its enumeration of specific violations by HRC management of Section 56.[2] The allegations provide context for HRC's attorney's statement to Local 1 that the Fleischli cease-and-desist order is "worthless." See Complaint ¶ 17. That statement, like HRC's continuing violations of Section 56, bespeaks a willful disregard of the CBA and of the two arbitrators' orders.

HRC claims that in order to obtain a confirmation order, Local one must "prove the incidents alleged in its Complaint constitute violations of the Arbitrators' Awards (or Section 56)." Corrected Memo at 13. This is wrong. To meet the jurisdictional prerequisite of a live controversy, Local 1 must plead the existence of such a controversy, and it has done so in detail. At the pleading stage, however, Local 1 need not "prove" its allegations, since facts in the pleadings are to be viewed "in the light most favorable to the nonmoving party." *Northern Indiana Gun & Outdoor Shows, Inc., v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).[3]

Moreover, the Court should not conduct an evidentiary inquiry into whether each of the 41 alleged violations in Paragraph 19 is a violation of Section 56, where the question is simply whether to confirm the Fleischli and Kenis awards. Such an inquiry is not needed in order to determine the appropriateness of the relief that Plaintiff requests. As is plain on the face of the

---

[2] If these allegations led to dismissal of the complaint to confirm, a "Catch-22" would be created. Without the allegations, the complaint would be dismissed for lack of a "case or controversy". With the allegations included, the complaint would be dismissed for bringing arbitrable claims to court.

[3] According to its Corrected Answer, HRC has failed even to investigate the specific allegations in Paragraph 19 of the Complaint but rather denies them only on the basis that "it lacks sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 19." HRC's contention that each of the 41 specific allegations of CBA violations "may ultimately be deemed an 'emergency' once the facts surrounding the incident are uncovered and analyzed," Corrected Memo at 13, is thus mere speculation—highly implausible, and in any case not a proper basis for granting judgment on the pleadings in HRC's favor. In fact, it evidences the same cavalier attitude toward the CBA that led to the arbitration awards.

10

complaint, Local 1 does not ask the Court for anything other than confirmation of the awards. The Court need find nothing with respect to the continuing violations other than that a controversy currently exists between the parties regarding whether HRC is complying with the Fleischli and Kenis awards.

4. **HRC's motion to compel arbitration is not within the Court's jurisdiction, since Local 1 has not refused to arbitrate.**

The Seventh Circuit has held that "in order to prevail in its suit to compel arbitration, the employer 'must establish that a dispute exists.'" *Chicago Typographical Union v. Chicago Sun-Times,* 860 F.2d 1420, 1426 (7th Cir. 1988), quoting *Alpha Beta Co. v. Retail Store Employees Union, Local 428*, 671 F.2d 1247 (9th Cir. 1982).

Here, there is no dispute that the Union's pending grievances about HRC's post-award violations of Section 56 are to be arbitrated. Specifically, Local 1 has not refused to arbitrate the pending grievances—rather, according to HRC's own brief, Local 1 has merely "requested that the processing of the grievance be held in abeyance pending the outcome of this litigation." HRC's Corrected Memo at 6. To request that a grievance be held in abeyance for a time is not to refuse to arbitrate. In the normal course of adjusting grievances, unions and employers request delays or extensions of time frequently; these requests are part and parcel of the bargaining relationship, not refusals to arbitrate.

In fact, HRC's brief refers to *two* pending grievances filed by Local 1 about Section 56 violations, aside from the grievances resolved by the Fleischli and Kenis awards. Far from resisting arbitration, Local 1 continues to make use of the CBA's grievance and arbitration procedure, as HRC admits.[4] There is no dispute here about whether Local 1 must arbitrate

---

[4] HRC cites numerous cases about the duty to arbitrate under a CBA with an arbitration provision. Local 1 agrees with HRC about the importance of final and binding arbitration proceedings in labor relations.

11

HRC's continuing violations. HRC's motion to compel arbitration is thus outside this Court's jurisdiction and must be denied.

5. **Neither *Honeywell* nor *Inland Steel* prevents this Court from confirming the arbitration awards.**

HRC relies on two Seventh Circuit decisions that it says preclude the confirmation of the injunctive relief awarded by Arbitrators Fleischli and Kenis. These decisions, *Honeywell* and *Inland Steel*, are plainly distinguishable from the present case.

In *Honeywell*, after a union won a series of arbitration awards finding that the employer was violating the contract by having supervisors perform bargaining-unit work, the union sued for "a variety of declaratory, injunctive, and monetary remedies." *Honeywell*, 522 F.2d at 1224. The arbitration awards do not appear to have ordered any sort of injunctive relief. *Id.* at 1228. Rather, the union argued that the arbitration awards had a *res judicata* effect that entitled the union to obtain an independent injunction from the federal court. *Id.* The district court and the Seventh Circuit held that the union was not relieved of its "duty to arbitrate." *Id.*[5]

In *Inland Steel*, a union was trying to enforce two arbitration awards finding that the employer violated the CBA when it sent workers home early despite the availability of work. Neither arbitration award ordered future compliance. Rather, they found violations and ordered make-whole remedies, without granting a cease-and-desist order. *Local 1545, United Mine*

---

[5] In *Honeywell*, the court suggested three conditions that would have to be met to completely bypass arbitration for repeated contract violations: (1) the union would have to aggregate its grievances into a single arbitration proceeding alleging a course of conduct; (2) the union would have to have requested declaratory and injunctive relief; and (3) the union would need to allege that the "factual basis of the . . . arbitration awards in its favor is substantially identical to the facts in the other grievances not yet presented for arbitration" such that "the Company's conduct constitutes willful and persistent disregard of the arbitration awards." *Honeywell*, 522 F.2d at 1226-1227. Although Local 1 does not seek to bypass the CBA's arbitration clause, in the present case all three factors have been met. Local 1 aggregated its grievances about Section 56 violations, and particularly the Kenis award dealt with a wide range of such violations. Local 1 requested injunctive relief from both arbitrators, and both arbitrators ordered such relief. And Local 1 now alleges ongoing contract violations by HRC and facts that show HRC intends to continue its violations by treating the arbitral injunctions as "worthless."

12

*Workers of America v. Inland Steel Coal Company*, 876 F.2d 1288, 1290-1291 (7th Cir. 1989). The Seventh Circuit found that the union was not entitled to prospective relief from the courts when the arbitrators had not themselves ordered prospective relief. "The fact that neither the Gibson nor the Sabella awards contain language directing that they apply to 'like violations' strongly indicates that the arbitrators did not want the awards to apply prospectively." *Id.* at 1295. In addition, the CBA appeared to prohibit prospective arbitration awards in language that limited an arbitrator's decision to "govern only the dispute before him." *Id.* For these reasons, the injunctive relief the union was seeking was not a proper remedy for the courts to grant.

The present case is utterly different from *Honeywell* and *Inland Steel* in one important respect: here, the union is not seeking to bypass the arbitration procedure. It is not asking the Court for anything that the arbitrators did not already order, but merely to issue an order confirming those awards. Both arbitration awards order HRC to "cease and desist" from violating Section 56 of the CBA, language that is clearly intended to have a prospective, injunctive effect. Also, unlike in *Inland Steel*, the CBA here does not preclude arbitrators from issuing injunctions. Thus, unlike in *Honeywell* and *Inland Steel,* the union here prays for relief that would give effect to, rather than bypassing, the parties' commitment to arbitrate disputes.

### 6. An order confirming the award would not burden the Court with enforcement duties.

HRC argues that a confirmation of the two awards would create a "regulatory injunction" and should not be granted. HRC's argument ignores the effects of an order confirming the awards. Rather than placing the Court in the role of closely supervising HRC's operations, a confirmation of the arbitration awards would incentivize HRC to comply with them and cease its violations. The Court's future role would be limited by the parties' continuing obligation to first turn to arbitration to resolve future disputes.

### A. Confirming the awards would not result in a regulatory injunction.

The most likely effect of an order confirming the awards is that HRC will begin to comply with them, obviating any further court litigation. It is to be hoped that HRC would give greater weight to a court order than it apparently gives to the Fleischli and Kenis awards, and would cease its violations of Section 56. Even if HRC continues to violate Section 56, few if any of those future violations would end up before this Court in the context of a motion to hold HRC in contempt of the confirmation order. This is because any such motion would have to show in specific detail that HRC clearly violated the cease-and-desist orders. *See United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). This standard for civil contempt would prevent litigation about isolated or unintentional violations by HRC.

If HRC continues its course of willful and persistent disregard of the arbitrators' awards, it will be engaging in precisely the type of contract violation that LMRA Section 301 allows the courts to prevent. The Court would not then be engaged in a "regulatory" role of supervising day-to-day hotel operations, but would be providing the essential judicial backstop that gives force to the parties' agreement and promotes the goals of federal labor law.

### B. It would be improper to grant judgment on the pleadings in favor of HRC on this issue.

HRC presents its "regulatory injunction" argument as a motion for judgment on the pleadings. Even if a confirmation of the awards constituted a "regulatory injunction"—and it does not—HRC's argument at this stage would be insufficient. It cites authority that courts are "reluctant" to issue regulatory injunctions. HRC's Corrected Memo at 14. But courts do in fact issue highly detailed injunctions that can require years of close judicial supervision, the appointment of special masters, etc., when the facts warrant. Here, in a motion for judgment on

the pleadings, HRC does not have any facts that would show that even a detailed "regulatory" injunction would be inappropriate.

What HRC offers instead are speculations that the court would be drawn into the "minutiae of supervising the management" of its hotel. HRC's Corrected Memo at 14. There is no evidence before the Court that this would be so. Rather, as argued above, it is to be expected that a court order confirming the Fleischli and Kenis awards would encourage HRC to start conforming its behavior to the arbitrators' cease-and-desist orders.

Furthermore, while the standard would be high for Local 1 to move for contempt if HRC continues violating the arbitral cease-and-desist orders, it is certainly possible that the standard could be met. This is particularly true if HRC acts according to its contention that the arbitral cease-and-desist orders are "worthless." With only the pleadings before the Court, HRC cannot show as a matter of law that confirming the awards would further burden the Court, unless HRC will admit that it plans to continue violating the arbitrators' orders.

## CONCLUSION

Local 1 is asking the Court for relief that is not available from an arbitrator: an order confirming the Fleischli and Kenis awards. There is no reason not to confirm those awards. HRC's attack on the arbitrators' chosen remedies, the cease-and-desist orders, is not within the scope of what the Court may consider in reviewing a labor arbitration award. HRC's motion should be denied.

Respectfully submitted,

| | |
|---|---|
| /s/ Richard McCracken | /s/Margaret Angelucci |
| DAVIS, COWELL & BOWE, LLP | ASHER, GITTLER & D'ALBA |
| 595 Market Street, Suite 1400 | 200 W. Jackson Blvd., Suite 1900 |
| San Francisco, CA 94105 | Chicago, IL 60606 |
| (415) 597-7200 | (312) 263-1500 |

## PROOF OF SERVICE

### STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

I am employed in the city and county of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: DAVIS, COWELL & BOWE, LLP, 595 Market Street, Suite 1400, San Francisco, California 94105.

On August 10, 2015, I served a copy of the following document(s) described as:

- **MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR FOR JUDGMENT ON THE PLEADINGS**

on the interested parties in this action as follows:

Douglas Alan Darch
Miriam B. Petrillo
**Baker & McKenzie LLP**
300 East Randolph Street, Suite 5000
Chicago, IL 60601-6342
Email: douglas.darch@bakermckenzie.com
miriam.petrillo@bakermckenzie.com

**BY E-FILING:** By filing the documents with the United States District Court, Northern District of Illinois, ECF system and causing such documents to be served on the parties at the e-mail addresses as above.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of August, 2015 at San Francisco, California.

_____
Dinh Luong